UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MINDY B., Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION, Defendant.

Case No. 1:25-cv-00955-AR

OPINION AND ORDER

**ARMISTEAD, United States Magistrate Judge**

Mindy B. challenges the Commissioner's final decision denying her disability insurance benefits and supplemental security income benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred by: (1) discounting her subjective symptom testimony about her fibromyalgia pain and its limiting effects and by ignoring evidence that her chronic obstructive pulmonary disease (COPD) required supplemental oxygen 24/7; (2) improperly evaluated the persuasiveness of the medical opinions of Dr. David Dryland and Leona Anderson, a nurse practitioner; and (3) improperly evaluated the lay testimony of her son, mother, and friend. (Pl.'s Br. at 2-3, ECF 17.)

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). With that standard of review applied, the Commissioner's decision is REVERSED and REMANDED for an immediate calculation and award of benefits.

**A.** ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ merely summarized the medical evidence and her treatment records and failed to provide "clear and convincing *reasons*" for discounting her subjective symptom testimony. (Pl.'s Br. at 5, quoting *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020) ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."). That is because, plaintiff contends, the ALJ failed to "specifically identify" what portion of her testimony the ALJ found not credible and "link that testimony to the particular parts of the record supporting [the] non-credibility determination." (*Id.*, quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). The Commissioner's response does not address plaintiff's *Lambert* argument. Perhaps for good reason, as the court cannot discern from the ALJ's discussion what evidence the ALJ determined undermines plaintiff's specific symptom testimony. Without those links, the court cannot meaningfully review the ALJ's basis for discrediting plaintiff's testimony. Nor was the ALJ's error harmless, as discussed further below. *See Lambert*, 980 F.3d at 1278 ("Because the ALJ did not provide enough reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence, we cannot treat the error as harmless.") (citation modified).

Plaintiff also takes issue with the ALJ's discussion of her symptom testimony concerning the limiting effects of her fibromyalgia. Specifically, plaintiff contends that ALJ's finding that it

was "unclear how" the diagnosis of "severe fibromyalgia" from Dr. David Dryland, a rheumatologist, was arrived at from his consultation given "normal exam findings during visits," which included that plaintiff's normal gait, range of motion, strength, and joint stability. (Tr. 23.) The problem with that assessment by the ALJ, according to plaintiff, is twofold. First, an ALJ cannot reject symptom testimony—including pain complaints—solely because it is not substantiated by objective findings. (Pl.'s Br. at 6-7 (quoting *Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017) ("The ALJ must take the claimant's subjective experiences of pain into account when determining the RFC.").) Second, the Ninth Circuit has said that, for those with fibromyalgia, their muscle strength and joints can appear normal, and the condition is diagnosed entirely on patients' reports of pain and other symptoms. (Pl.'s Br. at 7-8 (quoting *Revels v. Berryhill*, 874 F.3d 648, 652, 656 (9th Cir. 2017) (due to the "unique characteristics" of fibromyalgia, claimants may have normal "muscle strength, sensory functions, and reflexes").) That is consistent with the record here, which includes plaintiff's reports of widespread and constant pain that worsened in flares, as well as swelling and redness in the hands, despite good strength, range of motion and stability in her joints. (Tr. 1596, 1766-67.) And Dr. Dryland's physical exam of plaintiff prompted "obvious" and "severe" 18/18 fibromyalgia tender points. (Tr. 1596; Tr. 23.)

The Commissioner contends that the ALJ's appropriately "accommodated" plaintiff's testimony about her fibromyalgia by restricting her RFC to a reduced range of light work because her treatment history was limited, acknowledging that the ALJ's fibromyalgia discussion

may have been "less than ideal."[1] (Def.'s Resp. at 9, ECF 18, citing Tr. 20, 24).) According to the Commissioner, the ALJ discussed that plaintiff's treatment included prescription medications, narcotic pain medications, and that she did not require physical therapy or surgery. (Tr. 24.) And the ALJ found that plaintiff failed to obtain recommended electrodiagnostic testing, and that the evidence "does not support manipulative limitations." (Tr. 24.) Again, substantial evidence fails to support the ALJ's findings.

The ALJ identifies records showing that plaintiff obtained a surgical consultation for her cervical pain and neuropathy, yet surgery was not recommended because imaging did not reveal nerve root impingement. (Tr. 23-24, citing Tr. 1763-68.) Yet a claimant is not required to undergo surgery to have disabling pain. *See Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits[.]"); *Bennett v. Barnhart*, 60 F. App'x 135, 137 (9th Cir. 2003) (noting that intermittent pain is not inconsistent with disabling pain, and that surgery is an "aggressive form of treatment"). And prescription medications and narcotics for pain generally are not considered conservative or limited treatment. *Compare Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("conservative treatment" may include "treat[ment] with an over-the-counter pain medication"), *with Banford v. Kijakazi*, 2:21-cv-00785-EFB (SS), 2022 WL 4388390, at *4-5 (E.D. Cal. Sept. 22, 2022) (prescription medications Gabapentin, Baclofen, Toradol, Cymbalta, multiple steroid

---

1 The Commissioner also suggests that the ALJ appropriately discounted plaintiff's symptom testimony because it was inconsistent with her own function reports. (Def's Resp. at 7, 11). The ALJ did not, however, address that evidence when discounting plaintiff's testimony and the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 494 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

injections, chiropractic adjustments, physical therapy, and acupuncture for musculoskeletal pain were erroneously characterized as "conservative treatment") (collecting cases)). Although electrodiagnostic testing was not obtained, contrary to the ALJ's findings, medical records show that plaintiff's allegations of upper extremity pain and numbness are tied to her fibromyalgia and cervical degenerative disc disease. (Tr. 1443, 1536-37, 1696, 1763, 1768.) At bottom, the ALJ discounted plaintiff's subject symptom testimony about the severity of her fibromyalgia pain and its limitations based on the lack of objective findings and her failure to pursue more aggressive treatment that, for the most part, was not recommended. Because those findings are not backed by substantial evidence, they fail to provide specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony. *Revels*, 874 F.3d at 666; *see also Swales v. Saul*, 852 F. App'x 253, 255 (9th Cir. 2021) (ALJ erred in discounting claimant's testimony because of perceived inconsistency between subjective complaints and objective medical evidence, including that fibromyalgia is "diagnosed based on a patient's self-reported symptoms and that outwardly normal physical examinations are to be expected").

Also challenged by plaintiff is the ALJ's failure to account for her COPD and need for supplemental oxygen 24 hours a day. Plaintiff testified at the hearing that even with the supplemental oxygen, she can barely manage walking the length of her car without trouble breathing and that she needs to use a scooter at the grocery store. (Tr. 134-35.) According to plaintiff, her need for supplemental oxygen is supported by a spirometry/walk test showing a drop to 88 percent after four minutes, returning to 93 percent with supplemental oxygen, and records showing 91 percent using her prescribed supplemental oxygen (Tr. 1696, 1699.) At the hearing, the vocational expert testified that a person who required oxygen 24 hours a day and its

attendant equipment could not maintain employment, and that "it would be a special accommodation" for them to work. (Tr. 145-46.) Although the ALJ asked about plaintiff's supplemental oxygen at the hearing (Tr. 22, 134-35), and the record shows that it was prescribed by her provider (Tr. 1693-1701), the ALJ neither rejected that testimony nor accounted for that limitation in the RFC. An ALJ must explain why "significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) ("[A]n ALJ may not ignore significant probative evidence that bears on the disability analysis."). As the VE's testimony demonstrates, the ALJ could not reject this probative evidence without comment; consequently, the ALJ erred.

Finally, the Commissioner contends that the ALJ reasonably rejected plaintiff's mental health testimony because she received minimal mental health treatment. (Def.'s Resp. at 10, citing Tr. 24.); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."). Even if true, the court concludes that the ALJ's errors addressed above are not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115, 1122 (9th Cir. 2012) (ALJ's errors may be harmless if the other reasons are supported by substantial evidence and do not alter the ALJ's decision). The rationale that would remain—her limited mental health treatment—standing alone and on this record, fails to provide a specific, clear and convincing rationale for discounting plaintiff's testimony about her fibromyalgia and cervical pain, and for ignoring the evidence about her supplemental oxygen, and altered the nondisability determination.

**B.** ***Medical Opinion Evidence.*** Dr. Dryland opined that because of the physical limitations, pain, and difficulty concentrating imposed by plaintiff's fibromyalgia, she was incapable of

working full-time, even “low stress” jobs. (Tr. 1577-79.) The ALJ was unpersuaded by Dr. Dryland’s opinion, for a few reasons. To begin with, the ALJ discounted Dr. Dryland’s opinion because the treating source statement assessing those limitations was a “checkbox form,” provided by plaintiff’s representative and included leading questions. (Tr. 25.) The ALJ did not, however, identify the questions in the form that were leading in a way that could reasonably question the credibility of Dr. Dryland’s responses, and this court could not find them. Not all questions were posed in checkbox form and, even so, that it contained checkboxes is not necessarily problematic. The Ninth Circuit has observed that an ALJ’s rejection of an opinion merely reflected in checkboxes “rests on a mistaken factual premise. The check-box forms did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes created by [treatment providers] in the course of their relationship with [the claimant].” *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). As in *Garrison*, the form includes Dr. Dryland’s hand-written notes and his treatment notes for three visits identified in the form are included in the record. (Tr. 1577-96.) The ALJ’s rationale, accordingly, is not supported by substantial evidence.

As for supportability, the ALJ found that Dr. Dryland provided “little explanation beyond simply checking boxes” and that “it appears to be based entirely on the claimant’s subjective reports of fibromyalgia pain.” (Tr. 25.) Substantial evidence does not support those findings. As discussed above, the ALJ erred in rejecting plaintiff’s subjective symptom testimony about her fibromyalgia and cervical pain and limitations, and that rationale likewise fails to provide a sufficient basis backed by substantial evidence for rejecting Dr. Dryland’s opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (ALJ erred in discounting physician’s opinion based

on improperly rejected subjected symptom testimony and “misunderstanding of fibromyalgia”). Contrary to the ALJ’s finding, Dr. Dryland’s opinion identifies his treatment records and that he performed a “classic tender point test” that produced 18 out of 18 fibromyalgia tender points. (Tr. 1577, 1594-97.) His examination of plaintiff also revealed swelling and redness in plaintiff’s hands and a moderate to severe decreased range of motion in her cervical spine, that was “tender throughout” with “abnormal straightening.” (Tr. 1596.) In his follow up examinations, plaintiff continued to report severe pain, fatigue, and insomnia, and Dr. Dryland observed plaintiff standing and pacing, underscoring her pain complaints and supporting his fibromyalgia diagnosis. (Tr. 1584, 1588.) Thus, the ALJ erred in considering the supportability factor.

As for consistency, the ALJ noted that Dr. Dryland referred to plaintiff’s cervical disc disease and COPD as “severe,” yet other medical evidence referred to those impairments as “mild to moderate,” and that “[t]here are no medical records showing severe abnormalities.” (Tr. 25.) The ALJ’s findings are not entirely supported by substantial evidence. The ALJ is correct that imaging reports described plaintiff’s cervical disc disease as moderate (Tr. 1423), and her COPD as mild to moderate (Tr. 1699). Yet the ALJ again ignored that plaintiff was placed on supplemental oxygen 24/7 due to her persistent fatigue and acute shortness of breath, a detail noted by Dr. Dryland. (Tr. 1577, 1693.) And as discussed above, a fibromyalgia diagnosis is not inconsistent with other normal findings, such as strength, range of motion, and reflexes. *Revels*, 874 F.3d at 656 (fibromyalgia is diagnosed based on reports of pain, not with laboratory tests). Thus, the absence of other objective evidence with severe abnormalities as it pertains to plaintiff’s fibromyalgia and pain reports is not unusual, and the ALJ erred in demanding such evidence in the consistency finding.

Lastly, the ALJ erred in discounting Dr. Dryland's October 2023 opinion based on plaintiff's ability work part-time in June 2023—finding the "evidence does not support the complete erosion of functioning" in that four-month period. (Tr. 25.) Setting aside that Dr. Dryland found that plaintiff's fibromyalgia had worsened over time, was expected to continue to progress, and plaintiff's amended onset date was *after* the employment cited by the ALJ, the record doesn't support the ALJ's description of the worsening as a "complete" erosion. That plaintiff was able to work part-time, despite her conditions, does not mean she was fully functional before the onset period and immediately proceeded to have disabling impairments. *See Collard v. Bisignano*, No. 25-6334, ___ F.4th ___, 2026 WL 2856741, at *3 (9th Cir. Sept. 23, 2026) ("[A] past ability to work through pain can be entirely consistent with testimony of worsening impairments that become disabling over time."). Accordingly, the ALJ erred in evaluating the persuasiveness of Dr. Dryland's opinion.

Turning to Anderson's opinion, ALJ again was unpersuaded because it was in checkbox form and premised on leading questions. As with Dr. Dryland, that rationale unfairly characterizes Anderson's opinion and is not supported by substantial evidence. The ALJ's finding that Anderson's moderate to severe airway restriction was inconsistent with plaintiff's "mild to moderate COPD" is not supported by substantial evidence. (Tr. 25) The ALJ never grappled with plaintiff's prescription for supplemental oxygen 24 hours a day, which was supported by spirometry/walk testing identified in Anderson's treatment notes included in the record and cited in her opinion. (Tr. 1699, 1701, 1693, 1696.) Just as the ALJ erred in failing to account for the supplemental oxygen in the RFC, the ALJ erred in ignoring Anderson's treatment notes documenting that need. And as for the ALJ's insistence that Anderson's observation of

paresthesia of the upper extremities without electrodiagnostic studies, the ALJ overlooked that the record shows that plaintiff's upper extremity limitations are secondary to her fibromyalgia and cervical degenerative disc disease. For those reasons, the ALJ's supportability and consistency findings are not supported by substantial evidence and therefore, the ALJ erred.[2]

**C.** ***Remedy.*** The Commissioner argues that plaintiff has "forfeited" a remand for immediate benefits because she did not discuss in her opening brief the "credit-as-true" rule elements with the necessary degree of specificity. (Def.'s Resp. at 18-19.) The court disagrees. Although plaintiff does not have a stand-alone section in her opening brief requesting that specific remedy, it is patently evident that a remand for an immediate payment of benefits is what she is seeking. Throughout her opening brief, plaintiff urges the court to credit as true her symptom testimony and the opinions of Dr. Dryland and Anderson. (Pl.'s Br. at 2-4, 11-12, 17, 20, 21 (asking court to "remand the for an award of benefits").) Plaintiff also points to testimony from the VE that her need for constant use of supplemental oxygen leaves her unable to maintain competitive employment absent special accommodations. (Pl.'s Br. at 10-11 (arguing that when "properly credited, [plaintiff's] testimony requires a finding that her use of supplemental oxygen precludes full-time competitive employment"; Tr. 145-46.) Further highlighted by plaintiff is Anderson's opinion that she requires constant use of supplemental oxygen and that "that limitation is alone disabling." (Pl.'s Br. at 19.) And those arguments were sufficient to alert the Commissioner to respond by arguing that, if the court were to find that the ALJ erred with respect to plaintiff's

---

[2] The court declines to address the parties' arguments about the ALJ's evaluation of the lay testimony of plaintiff's son, mother, and friend because the ALJ's other errors are dispositive.

symptom testimony and Dr. Dryland's and Anderson's opinions, outstanding issues remained to be resolved by the ALJ, thus requiring a remand for further proceedings. (Def.'s Resp. at 18-19.)

With that said, the court remands this case for an immediate calculation and award of benefits because plaintiff satisfies the "three-part-credit-as-true" analysis and there is no serious doubt plaintiff is disabled. *See Garrison*, 759 F.3d at 1020, 1022-23 (outlining the credit as true analysis and holding that a remand for benefits is appropriate when the analysis is met and there is no doubt plaintiff is disabled). First, as explained above, the ALJ failed to provide legally sufficient reasons for discounting plaintiff's symptom testimony and in rejecting Dr. Dryland's and Anderson's medical opinions. Second, there are no outstanding issues that must be resolved and the record has been fully developed. Two issues necessary for a finding of disability need no further development from the ALJ—the debilitating effect of plaintiff's fibromyalgia and the full-time use of supplemental oxygen. And the record contains VE testimony that a person requiring oxygen 24 hours a day and its attendant equipment could not perform the jobs identified by the ALJ and could not maintain employment because "it would be a special accommodation" for them to work. (Tr. 145-46.) In other words, plaintiff's need for supplemental oxygen 24 hours a day due to her COPD precludes competitive employment. Third, if plaintiff's testimony, Dr. Dryland's medical opinion, and Anderson's opinion are credited as true, the Commissioner would be required to find plaintiff disabled. Finally, reviewing the whole record creates no serious doubt that plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1022-23; *Revels*, 874 F.3d at 668-69.

\ \ \ \ \

\ \ \ \ \

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate calculation and award of benefits.

ORDERED: October 29, 2026.

JEFF ARMISTEAD
United States Magistrate Judge